MARY L. GRANT et al., Respondents, *v.* JANE S. KEATOR, et al., Impleaded, etc., Appellants.

In an action for partition, wherein plaintiffs claimed title as heirs-at-law of J., certain of the defendants answered, claiming title under a sale on foreclosure of a mortgage executed by W., alleging, in substance, that J. and W. were formerly tenants in common of the premises in question; that J. made a parol agreement to sell his interest to W. and that the purchase-price had been paid. They asked, in case it should be found that the purchase-price had not been paid in full, for leave to pay the balance, and that plaintiffs upon such payment be decreed to execute a conveyance. The facts alleged, except payment of the purchase-price, were conceded. For the purpose of proving payment said defendants showed that between the dates of the parol contract and the death of J. there was a mutual account between him and W., upon which, at the time of such death, there was an apparent balance in favor of the latter of nearly the amount of the purchase-price. W. was appointed one of the administrators of the estate of J., and upon an accounting before the surrogate, to which all the heirs and next of kin of J. were parties, the surrogate decreed that the whole of said balance should be applied in payment of a deficiency of assets caused by an appropriation of the funds of the estate by W. as administrator. The record of the accounting was introduced in evidence by said defendants. *Held*, that they were not in position to dispute the force of the record as proof or its efficacy as an adjudication between the parties.

It appeared that said account was kept by W.; that he and J. lived together, and that the latter had an opportunity to examine and inspect the account and had been seen at times looking over it. The account showed inferentially that the amount of the purchase-price had been reduced each year, up to a certain time, by application of the annual balances thereon. It did not appear that J. ever saw the items subsequently entered, and they bore evidence of having been entered after his death. The court gave credit for the annual balances so applied and found that at the time the mortgage, under which the appellants claimed was executed, W. was indebted to the estate of J., aside from the balance of the purchase money, in a sum greater than the balance of the account, and decided that W. had no equitable right to have such balance applied upon the purchase-price. *Held*, no error; that while the court was justified in finding payment up to the amount shown by the account to have been so applied by the parties; with reference to the subsequent items there was no presumption that they were intended to operate as payment and no equity requiring such application.

The trial court held that the appellants were entitled to pay the balance, so found to be unpaid of the purchase, and upon such payment to have a conveyance from plaintiffs, and gave them thirty days in which to make such payment, and in default thereof, decreed partition. *Held,* that as the relief granted was based upon the averments and the prayer of the answer, and was intended for defendants' benefit, they were not aggrieved and could not complain; and if they chose not to avail themselves thereof the title was left in plaintiffs, and they had the right of partition; that defendants, by their mortgage, acquired simply the right of W. to pay the unpaid purchase-price and thus acquire a right to a deed; that by giving the mortgage W. did not bar the right of the parties to make such application of the balance of the account as they should agree to; and that the disposition of such balance made by the surrogate was conclusive upon the appellants.

(Argued October 28, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1887, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*M. M. Waters* for appellant. Mutual demands, even if independent, should compensate each other, leaving the difference as the sum due. (*Littlefield* v. *A. C. Bk.,* 97 N. Y. 581, 584.) Plaintiffs could not maintain the action for partition. (Code of Civ. Pro. 1532; *Sullivan* v. *Sullivan,* 66 N. Y. 37.) The complaint in this action does not state facts constituting a cause of action. (Code of Civ. Pro. § 1207; *Wright* v. *Delafield,* 25 N. Y. 266, 270.) The transfer of the equities as the legal effect of the mortgage, the subrogation to the equities, and the position of the parties threatening wrong to the plaintiff, all combine to require the court to protect appellants in their possession and title against the forfeiture adjudged. (*Lindsay* v. *Jackson,* 2 Paige, 581; *Littlefield* v. *A. C. Bk.,* 97 N. Y. 581.) The appellants, by virtue of their mortgage, were entitled to be subrogated to all the rights, both legal and equitable, that William had at the time of the execution of

the mortgage to Mr. Keator and wife, and whoever acquired any rights from William after that acquired them subject to the appellants' equities, unless they were *bona fide* purchasers for a valuable consideration. (*Littlefield* v. *A. C. Bk.*, 97 N. Y. 581, 584, 585 ; *Clerk* v. *McKin*, 95 id. 346 ; *Gay* v. *Gay*, 10 Paige, 369 ; *Davidson* v. *Alfaro*, 80 N. Y. 660 ; *Coffin* v. *McLean*, Id. 560 ; *Smith* v. *Felton*, 43 id. 419 ; *Zogbaum* v. *Parker*, 55 id. 120 ; *Lindsay* v. *Jackson*, 2 Paige, 581.)

*Edwin D. Wagner* for respondent. The denial of the motion for a nonsuit was correct. (Gerard's Titles to Real Estate [1st ed.] 122, § 17.) The evidence that the "Will Grant" house was not needed for any purpose of the farm at the time it was built was competent. (*Scott* v. *Gurnsey*, 48 N. Y. 106 ; *Coakley* v. *Mahar*, 36 Hun, 157.) The declarations of a deceased person are admissible against his executors or administrators. (1 Greenl. on Ev. § 189 ) Plaintiff held the legal title to the premises and had the right to hold it as security for the payment of the purchase-price. (*Smith* v. *Smith*, 9 Abb. [N. S.] 422 ; 2 Story's Eq. Jur. §§ 1218–1220, 1226, 1227.) The appellant's exceptions to the findings of fact is a general exception and of no avail. (*Newell* v. *Doty*, 33 N. Y. 83 ; *Wheeler* v. *Billings*, 38 id. 263 ; *Ward* v. *Craig*, 87 id. 550 ; *Hepburn* v. *Montgomery*, 97 id. 617.) The court properly adjudged that if defendants failed to elect to pay within thirty days the amount due on the contract for the purchase of John Grant's interest in the premises, such contract should be deemed abandoned and forfeited for non-payment, and plaintiffs should have judgment for the partition and sale of the premises. (*Smith* v. *Smith*, 9 Abb. [N. S.] 423 ; *Thomson* v. *Smith*, 63 N. Y. 301 ; *Harding* v. *Tifft*, 75 id. 461 ; *Wright* v. *Wright*, 72 id. 149 ; *Allen* v. *Culver*, 3 Denio, 284 ; *Seymour* v. *Marvin*, 11 Barb. 80 ; *Pattison* v. *Hull*, 9 Cow. 747 ; *Bois* v. *Cranfield*, Syles, 239 ; *Anon.*, Cro. Eliz. 68 ; *Pinnel's Case*, 5 Rep. 117 ; *Clark* v. *Burdet*, 2 Hale, 197, 200 ; *Van Rensselaer* v. *Roberts*, 5 Denio, 470, 475 ; *Hutchinson* v. *Bell*, 1 Taunt. 558.) The equity of the estate of John

Grant to be repaid the debt it had against William Ward Grant was superior to the equity of the appellants. (*Wilkies* v. *Harper*, 2 Barb. Ch. 338.) The mortgagees, at the time they took their mortgage, knew that William Ward Grant did not have the legal title to the lands in question, and that he had not paid for them, and, therefore, they were not mortgagees in good faith without notice of the prior equities and rights of the plaintiffs. (*Brumfield* v. *Boutall*, 24 Hun, 452; *Williamson* v. *Brown*, 15 N. Y. 354.) The plaintiffs were in constructive possession, in common with William Ward Grant, at the time this action was commenced. And that was sufficient to enable them to maintain the action. (*Beebe* v. *Griffing*, 14 N. Y. 235; *Wainman* v. *Hampton*, 110 id. 429; Code of Civ. Pro. § 1532.)

RUGER, Ch. J. The plaintiffs brought this action to obtain partition of the lands described in the complaint. They alleged title to such lands as heirs-at-law of John Grant, deceased, who, with William Ward Grant, inherited them from Avery Grant, their father, and were tenants in common thereof at the death of John Grant in 1869.

The defendants claimed title to the lands under a foreclosure sale and purchase by them upon a mortgage given thereon by William Ward Grant, April 20, 1875, to secure a prior indebtedness from him to Chauncey and Jane S. Keator, and an executory parol sale of said lands, made in 1855, by John Grant to William Ward Grant and payment by him of the purchase-price to John Grant. The answer also asked, in case it should be found that such purchase-price had not been paid in full, that the said appellants be allowed to pay such amount as remained unpaid thereon and be decreed, in case such payment was made, a conveyance of the lands by the heirs-at-law of said John Grant.

The principal controversy on the trial was, whether such purchase-price had been paid to John Grant during his lifetime, or to his personal representatives thereafter. No question is made in the case but that John Grant, after succeeding

to the title of the lands with his brother, William Ward Grant, contracted by parol, in 1855, to convey his interest therein to his brother on payment of the sum of $3,300 and certain other considerations, and the question litigated was whether this sum had been paid, and, if not, whether the defendants should have leave to pay the sum remaining unpaid and be decreed a conveyance of the premises.

The evidence failed to show that the purchase-price of said land had been paid. The appellants attempted to prove this fact by showing that, between the date of said parol contract of sale and the death of John Grant, in 1869, a mutual account existed between the brothers, upon which, at the time of the death of John Grant, there was an apparent balance in favor of William Ward Grant of $3,152.34, exclusive of the amount of the purchase-price of said land. Upon the death of John Grant, Fanny Grant, his widow, and William Ward Grant, his brother, were appointed administratrix and administrator of his estate and qualified as such. In 1876 an accounting on the part of the administrators of John Grant's estate was had before the surrogate of Delaware county, to which all of the heirs and next of kin of John Grant were parties, and such proceedings were had therein that said surrogate decreed that the whole balance of the account of William Ward Grant against the estate of John Grant, excluding the amount due for such real estate as exhibited, amounting to the sum of $3,152.34, should be applied in payment of a deficiency of assets in such estate caused by the appropriation by William Ward Grant, as administrator, of the funds of said estate. The record of this accounting was introduced in evidence by the defendants, and they are not in position to dispute its force as proof, or its efficacy as an adjudication between the parties thereto.

It was found by the court below, on the trial under review, that it was never agreed or understood between John Grant and William Ward Grant, that any of the items of account between them were received, or should be applied in payment of the balance due upon the purchase-price of said lands. But

it was also found that William Ward Grant had paid to John Grant the interest on said sum of $3,300 up to November 1, 1869, and $1,616.86 upon the principal, leaving unpaid thereon the sum of $1,683.14 of principal and $1,800.81 of interest, amounting at the time of the trial to $3,283.95. This finding was apparently based upon an inference that there had been an application by the parties of the annual balances of the account, previous to the year 1869, in favor of William Ward Grant to the purchase-price of said land, which had reduced the amount thereof to $1,683.14.

We think there was evidence from which such an inference might properly be drawn. The account which was proved only by the records of the Surrogate's Court, was shown to have been kept by William Ward Grant upon an account book formerly belonging to his father. Until 1866, William Ward Grant and his brother, John Grant, lived together in the same house and John had an opportunity to examine this book and inspect the account, and had been seen sometimes looking over it. That account showed, inferentially, that the amount of the purchase-price had been reduced each year by the application thereon of the annual balances until in 1869 when the balance in favor of John, including the amount of the purchase-price, was $1,683.14. Certain items were added after that time, and it cannot be inferred as to such items that John ever saw them, and they bear inherent evidence of being discovered and entered in the book after John's death, and consist of items inadequately proved. With reference to those items there can be no presumption that they were intended to operate as payments upon the purchase-price of said land.

It was also found by the trial court that on the 20th of April, 1875, at the time the appellants acquired, by mortgage, the interest of William Ward Grant in such lands, said William Ward Grant was indebted to the estate of John Grant, aside from the balance due on said purchase, in a sum greater than the balance of his account against such estate, and that said mortgagees acquired by such mortgage no equitable right.

to have such balance applied upon the said William Ward Grant's indebtedness for the purchase-price of such lands.

The trial court sustained the defense set up to the extent of holding that $1,616.86, and interest to November, 1869, had been paid on the purchase-price of said lands, and that said appellants were entitled to pay the balance remaining unpaid thereon, and in that event have a conveyance from the heirs-at-law. The decree gave them thirty days in which to make such payment, and in default thereof decreed partition of the lands as prayed in the complaint.

The appellants raise a number of questions, upon the authority of the court to grant the relief which it awarded to them, which seem to us to be unworthy of serious consideration. Such relief was based altogether upon the allegations of the answer, and the claim for relief contained in it, and whatever may have been its force or effect, the defendants are not injured by a privilege awarded to them, at their request, and intended for their benefit. The court gave the defendants an opportunity to defeat the plaintiff's action altogether if they choose; but if they did not elect to avail themselves of this privilege they were at liberty to refuse, and in that event nothing was left to stand in the way of the enforcement of the plaintiff's legal rights. They could, in no sense, be aggrieved by the extension of a privilege which they did not elect to avail themselves of. The defendants had no legal right to an extension of time within which to satisfy the vendor's lien; and the act of the court in giving them thirty days to do so was an act of pure grace, enabling them to avoid the effect of a long continued default in the performance of their obligations to pay the purchase-price. They chose not to pay and take a conveyance, and the necessary effect of this determination was to leave the title of the land in the vendor's heirs, with all the rights and privileges pertaining to such title, among which was the right of partition. (*Wainman* v. *Hampton*, 110 N. Y. 429.)

The defendants, by their mortgage, acquired such right in the lands as William Ward Grant possessed at the time it was

given, and that was the right to pay the unpaid purchase-price and entitle themselves to a conveyance thereof. William Ward Grant was then indebted to John Grant's estate, not only in the amount of $1,683.14 for the unpaid balance on the purchase-price of this land, but also in other amounts sufficiently large to extinguish any account which he had against such estate. The balance of such account was then an open unliquidated account, no part of which had been applied as payment upon any particular demand of the estate, and in the settlement of its accounts the surrogate, upon the request of William Ward Grant, applied it to the extinction of the unsecured demands of the estate against William Ward Grant, to the exclusion of the sum due upon the purchase-price of said land; and this, we think, the representatives and heirs of John Grant had a right to insist upon, and the surrogate lawful authority to make. No application having been made of this account by the parties at the date of the mortgage in question, except, perhaps, the sum of $1,616.86, William Ward Grant did not, by giving it, bar the right of the parties to make such disposition of the balance of the account as they might deem proper to do. The appellants took their mortgage with notice of their mortgagor's want of title, and without knowledge of the state of the accounts between their mortgagor and his vendor, and they cannot object to any application made of this indebtedness which the parties interested should thereafter agree to make. (*Harding* v. *Tifft*, 75 N. Y. 461.)

The trial court have given to the appellants, as a payment upon the purchase-price of said land, the benefit of the balance of account, viz.: $1,616.86, appearing to be due to William Ward Grant at the death of John Grant, although William Ward Grant seems also to have received credit for the same amount on his accounting before the surrogate. Certainly the appellants have no right to complain of this disposition of the account. They have secured a credit amounting to one-half of the balance appearing upon the account as a payment upon the land, and they now claim that the other

half shall also be so applied, although it has been otherwise applied by the parties and the surrogate.

As against the representatives of John Grant, the appellants have shown no right, either by proof of the items of the account or of any agreement of the parties, to have this amount applied as a payment upon a demand for which they held security, to the exclusion of unsecured debts. There was nothing to prevent the parties to this indebtedness, at the date of the surrogate's decree, from making such application thereof as they might agree upon, and having, under the sanction of the Surrogate's Court, applied it upon the unsecured indebtedness of the debtor, strangers to the transaction have no right to complain. The appellants were not parties to that accounting and had no legal right to appear therein or litigate the question of the application of such account, and the disposition then made of it is conclusive upon them. (*O'Blenis* v. *Karing*, 57 N. Y. 649.)

The questions presented by the appellants as to the respective rights of the heirs-at-law and the representatives of John Grant in the unpaid balance of the purchase-price of the land in question, do not concern them and need not be determined in this litigation.

We have examined other questions raised by the appellants' counsel upon the argument, but are of the opinion that none of them require serious notice.

The judgment of the court below should, therefore, be affirmed.

All concur.

Judgment affirmed.